**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3694-17T2

MARIELLE KUCZINSKI,

    Plaintiff-Respondent,

v.

STATE OF NEW JERSEY,
NEW JERSEY STATE POLICE,
and MARQUICE D. PRATHER,
individually and in his official
capacity,

    Defendants-Appellants.

_____

Argued January 22, 2019 – Decided April 16, 2019

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0225-18.

Christopher J. Riggs, Deputy Attorney General, argued the cause for appellants State of New Jersey and New Jersey State Police (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher J. Riggs, on the briefs).

Frederick L. Rubenstein, attorney, argued the cause for respondent (James P. Nolan and Associates, LLC, attorneys; Frederick L. Rubenstein, on the brief).

PER CURIAM

Defendants State of New Jersey and New Jersey State Police (collectively defendants) appeal the Law Division's order granting plaintiff Marielle Kuczinski's motion to file a late tort claim notice under the New Jersey Tort Claim Act (TCA) in accordance with N.J.S.A. 59:8-9. They contend that plaintiff failed to present any extraordinary circumstances in accordance with the statute to warrant her late filing of a tort claim notice. We disagree, and affirm substantially for the reasons set forth by Judge Vincent LeBlon in his oral decision.

I

On January 13, 2016, plaintiff was driving on Interstate 95 when she was pulled over by New Jersey State Trooper, defendant Marquice D. Prather. Prather then asked plaintiff for her driving credentials, which she handed over except for her auto insurance card. Because she did not have her insurance card, she gave him her cell phone, which contained a photocopy of the document. Prather took her phone, along with her driver's license and car registration, and returned to his patrol car. Thereafter, Prather returned plaintiff's cell phone and

driving credentials, and allowed her to go on her way without issuing her a motor vehicle summons. The record does not disclose why Prather pulled over plaintiff.

A year later, on January 17, 2017, members of the New Jersey State Police Office of Professional Standards (OPS) met with plaintiff and informed her an investigation revealed that Prather had removed some personal information and photographs from her cell phone during her roadside stop and disseminated it without her consent.

As a result of his transgressions involving plaintiff and others, Prather pled guilty to accusation of third-degree invasion of property, N.J.S.A. 2C:14-9(d)(1), fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1), and falsifying or tampering with records, N.J.S.A. 2C:21-4(a). He was sentenced to probation on December 8, 2017. Prather was dismissed from the State Police.

On January 11, 2018, six days short of the one-year anniversary when she learned that Prather invaded her privacy, plaintiff submitted a motion to file a late tort claim notice. At oral argument over a month later, the motion judge granted plaintiff's request to testify at an evidentiary hearing to supplement the certification she attached to the motion concerning the extraordinary

3

circumstances she contended justified a late tort claim notice under N.J.S.A. 59:8-9.

At the hearing, plaintiff, twenty-seven years old at the time, testified that when she became aware on January 17, 2017, that Prather obtained and disseminated her personal information – including nude photos she took to document her weight loss from an exercise program – the anxiety and depression she had been experiencing from an abusive relationship and her best friend's suicide was exacerbated. Having previously been in therapy, plaintiff's therapist helped her work through the ill effects she suffered from Prather's misconduct. She further claimed her Type 1 diabetes and autoimmune ailments were negatively impacted. She attributed her focus towards her physical and mental health as to why she waited nine months after she learned about Prather's action to seek legal counsel regarding her rights.

On March 9, following plaintiff's testimony and counsel's argument, Judge LeBlon issued an order granting her motion to file a late tort claim notice. Defendants filed a Notice of Appeal and Case Information Statement on April 23, which included the assertion that the judge did not set forth his reasons in a written or oral decision for granting the motion. Having learned of this assertion, the judge placed his oral decision on the record the next day. In doing

4

so, the judge noted that he intended to prepare a written decision or render an oral decision before learning the appeal had been filed.

Judge LeBlon determined plaintiff's claim accrued on January 11, 2017, when she learned from OPS that Prather had invaded her privacy during that roadside stop about a year earlier by removing information from her cell phone. Finding that defendants were not prejudiced because they notified plaintiff of her potential claim, the judge reasoned:

> Here, I find and I believe that the plaintiff has established extraordinary circumstances under the New Jersey Torts Claim Act. The case law as I understand it requires a determination by this [c]ourt on a case-by-case basis. Here, I find that the plaintiff sustained severe psychological injuries as a result of the incident and, as such, this constitutes extraordinary circumstances.
>
> Here, the plaintiff, as I indicated, in her testimony was suffering from physical health problems as well as mental health problems. This was exacerbated and increased, her anxiety and depression. She was in therapy from the time of the incident and from the time of the learning of this from the State Police Office of Professional Standards. She was trying to focus on her improving physical health. She was really not leaving the house. She was only going out to doctors' appointments. Her parents were taking care of her. She had trust issues. She had anxiety. And it doesn't – it doesn't do anything to simply say that she had access to a telephone or that she could drive to go someplace. That's kind of ludicrous to suggest that that takes away

A-3694-17T2

or eliminates that extraordinary circumstances which I've just referred to.

## II

Before us, defendants contend the judge abused his discretion in finding plaintiff established extraordinary circumstances that prevented her from filing a timely tort claim notice. We disagree and affirm based upon the judge's credibility findings and thoughtful reasoning in his oral decision that defendants were not prejudiced by the late filing and that plaintiff's medical conditions warranted extraordinary circumstances for filing a late tort claim. We add the following additional comments.

Our standard of review of an order granting or denying a motion for leave to file a late notice of claim under the TCA is abuse of discretion. McDade v. Siazon, 208 N.J. 463, 476-77 (2011) (citing Lamb v. Glob. Landfill Reclaiming, 111 N.J. 134, 146 (1988)). "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law." D.D. v. Univ. of Med. and Dentistry of N.J., 213 N.J. 130, 147 (2013). In 1994, the Legislature added the "extraordinary circumstances" language to N.J.S.A. 59:8-9, to replace a "fairly permissive standard" with a "more demanding" one in

6

allowing the filing of a late tort claim notice. Lowe v. Zarghami, 158 N.J. 606, 625 (1999); see also Beauchamp v. Amedio, 164 N.J. 111, 118 (2000).

Contrary to defendants' assertion, we see no abuse of discretion in Judge LeBlon's factual findings and legal conclusions that plaintiff established extraordinary circumstances to file a late tort claim notice through her evidentiary hearing testimony that her medical and emotional state kept her from meeting with an attorney to pursue her claim against defendants. Defendants' reliance on D.D. and O'Neill v. City of Newark, 304 N.J. Super. 543 (App. Div. 1997), where it was determined the plaintiffs' medical proofs were insufficient, is misplaced.

In D.D., the Court held that the plaintiff's medical condition and her attorney's shortcomings did not constitute extraordinary circumstances to support her motion to file a late tort claim notice – regarding the defendant's release of her private and confidential health information on the internet. 213 N.J. at 149. To support her reason for not filing a timely tort claim notice, plaintiff certified that her "primary concern was dealing with [her] medical conditions without regard to a potential lawsuit against [the] defendants." Id. at 138 (alteration in original). She specifically asserted that she "began exhibiting medical symptoms as a result of increased stress and anxiety, including but not

limited to elevated blood pressure, fatigue, insomnia, depression and general anxiety[,]" which exacerbated other health issues caused by "increased stress and anxiety." Id. at 137-38.

The Court, however, rejected her contention because "[s]he did not further describe any efforts that she undertook to address those medical conditions and she provided no documentary evidence to support the statements in her certification." Id. at 138. The Court observed that the plaintiff's "vaguely described complaints of stress and emotional strain that would quite ordinarily follow from learning that one's personal information had found its way to the internet." Id. at 150. The Court also held that the doctor's note plaintiff relied upon suggested "that [her] medical complaints arose shortly before the time when the doctor wrote the note, by which time the statutory window had closed." Id. at 151. Thus, the plaintiff's medical proofs were insufficient to overcome the statutory bar, as she presented no evidence indicating that her medical condition significantly interfered with her ability to timely pursue her cause of action. Id. at 151-52.

In O'Neill, we affirmed the trial court's order denying the plaintiff's motion to file a late tort claim notice that was based upon his certification that he was unable to seek legal advice within ninety days of an accident because of

the psychological effect caused by his injury – neurological damage to his leg. 304 N.J. Super at 553-54. We concluded the psychologist report the plaintiff supplied with his motion failed to indicate, "he could not function sufficiently to appreciate the need to seek advice as to possible liability for his injuries." Id. 554. Despite the "plaintiff [being] justifiably preoccupied with getting his leg examined and treated after the accident, rather than with filing a lawsuit" there was "insufficient reason to support a finding of extraordinary circumstances" given his reliance on an expert opinion that did not support his claim that he was incapable of seeking legal counsel. Ibid.

Unlike in D.D. and O'Neill, plaintiff here did not submit any medical documentation. Instead, Judge LeBlon had the ability to observe plaintiff testify, and be subjected to cross-examination, regarding the impact of finding out that Prather saw and removed her personal information from her cell phone – such as her nude photos – to exacerbate her already weakened medical and emotional state. And unlike in D.D. and O'Neill, where the plaintiffs were faulted for not proving how their medical conditions impacted their late filings, plaintiff described in detail how her feeling of helplessness from Prather's actions prompted her to focus on her health by seeing a therapist, which in turn prevented her from consulting an attorney regarding the possible redress of her

A-3694-17T2

violated rights. In finding plaintiff's situation constituted extraordinary circumstances in filing her tort claim notice, the judge was not relying upon vague assertions, but had the opportunity to assess the credibility of her assertion through her in-court testimony. We recognize that plaintiff did not present a certification or testimony from a medical expert to substantiate her extraordinary circumstances – which could have been the best evidence. There is, however, no precedent that would require a plaintiff to do so. Significantly, Judge LeBlon determined plaintiff was so incapacitated by the disclosure of Prather's actions, which exacerbated her preexisting condition to the extent that it affected her ability to file a timely tort claim notice against defendants.

In addition, based upon the judge's finding that defendants were not prejudiced by plaintiff's late tort claim notice because they informed plaintiff that Prather invaded her privacy, we find instructive the Court's recent decision in O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335 (2019). There, the Court reversed this court's decision and upheld the trial court's order granting plaintiff's motion to file a late tort claim notice against the New Jersey Turnpike Authority (NJTA). Id. at 338-37. Among the totality of facts and circumstances that were extraordinary, the Court noted that even though the NJTA was not timely served through the attorney's inadvertent service of the tort claim notice on the State of

New Jersey, the NJTA was aware of the potential claim because it was timely served a tort claim notice by another claimant.[1] Id. at 351-52.

The record on appeal before us does not indicate whether any other claimants filed a timely tort claim notice regarding Prather's invasion of privacy. Nonetheless, considering that defendants' disclosure to plaintiff made her aware of Prather's misdeeds, in combination with plaintiff's motion being filed within one year of the accrual of her claim and the judge's credibility findings that plaintiff was experiencing physical and mental conditions from the revelation which affected her ability to file a timely tort claim notice, we conclude the totality of the circumstances warrant plaintiff to file a late tort claim notice. Before plaintiff became aware that her privacy was invaded, defendants had the "opportunity to plan for potential liability and correct the underlying condition." Id. at 345 (quoting Jones v. Morey's Pier, Inc., 230 N.J. 142, 155 (2017)). Hence, we conclude that the circumstances of this case are extraordinary and Judge LeBlon did not abuse his discretion in granting plaintiff's motion to file a late tort claim notice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] The Court noted in its decision that our court was not aware of the other claimant's timely tort claim notice setting forth the same theory of liability as the plaintiff when we rendered our decision. O'Donnell, 236 N.J. at 352.

A-3694-17T2